# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERTO PARED, JR.,** | |
| **PLAINTIFF** | Civil Action No.: _____ |
| v. | |
| **ASHLEY FURNITURE INDUSTRIES, INC.,** | **JURY TRIAL DEMANDED** |
| **and** | |
| **JONATHAN VAZQUEZ,** | |
| **DEFENDANTS.** | |

## COMPLAINT AND JURY DEMAND

Plaintiff Roberto Pared, Jr., by and through his undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1. This is an action by Roberto Pared, Jr. (hereinafter "Mr. Pared" or "Plaintiff"), a former applicant for employment with Ashely Furniture Industries, Inc. (hereinafter, "Ashley Furniture" or "Defendant"). Mr. Pared has been harmed by Ashley Furniture's discrimination, harassment and retaliation, due to its failure and/or refusal to hire Mr. Pared due to his sex and refusal to acquiesce to the sexual advances of Defendant Jonathan Vazquez.

2. This action arises under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq. ("Title VII") and the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA").

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On July 16, 2019, Plaintiff timely filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), which was dual-filed as a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On December 2, 2020, the EEOC issued a Notice of Right to Sue to Plaintiff and this action has been filed within ninety (90) days of Plaintiff's receipt of said Notice. With respect to the PHRA claims herein, it has been more than one year since Plaintiff filed his Complaint with the PHRC.

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Eastern District of Pennsylvania because the claims and significant activities associated with the claims took place in this judicial district.

## PARTIES

9. Plaintiff Roberto Pared, Jr. is an adult male citizen and resident of York, Pennsylvania and the United States of America.

10. Defendant Ashley Furniture Industries, Inc. is a Wisconsin company with its corporate headquarters in Arcadia, Wisconsin and a business address at 45 Ashley Way, Leesport, Pennsylvania, where Mr. Pared was interviewed.

11. Defendant Jonathan Vazquez is an adult individual who interviewed Mr. Pared.

12. Mr. Vazquez aided and abetted Ashley Furniture's discrimination, harassment and retaliation as alleged herein. Mr. Vazquez has a business address at 45 Ashley Way, Leesport, Pennsylvania, where Mr. Pared was interviewed.

13. At all relevant times, Defendant Ashley Furniture is and has been an employer employing more than five-hundred (500) employees.

14. Defendant Ashley Furniture does significant business within the Commonwealth of Pennsylvania.

15. At all relevant times, employees of Ashley Furniture acted as agents and servants for Ashley Furniture.

16. At all relevant times, employees of Ashley Furniture were acting within the scope of their authority and in the course of employment under the direct control of Ashley Furniture.

17. At all times material hereto, Ashley Furniture acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Ashley Furniture and in furtherance of Ashley Furniture's business.

18. At all times relevant hereto, Defendants each are and have been an "employer" and/or "person" within the meaning of the laws at issue in this matter, and are accordingly subject to the provisions of said laws.

19. At all relevant times hereto, Plaintiff was an applicant for employment within the meaning of the laws at issue in this suit and is accordingly entitled to the protections of said laws.

20. This Honorable Court has jurisdiction over Defendants.

## FACTS

21. Ashley Furniture is a manufacturer and distributer of various furniture products.

22. In late December of 2018, Mr. Pared was compelled to leave his position of Area Coordinator with his prior place of employment, as it required significant travel. Mr. Pared was unable to travel as often as needed for this position because he takes care of his disabled daughter, who was born paralyzed.

23. On or about January 21, 2019, in seeking a new permanent position of employment, Mr. Pared applied for a position with Defendant Ashley Furniture on the online job site "Indeed.com."

24. Two days later, on January 23, 2019, Mr. Pared received a call from Edna Santillan, Human Resources Administrative Assistant of Ashley Furniture. Ms. Santillan indicated that Ashley Furniture had several open positions, and that Ashley Furniture was very interested in interviewing Mr. Pared for a supervisor position.

25. Ms. Santillan stated that, based on his resumé and management experience, Mr. Pared would be an "amazing fit" for Ashley Furniture.

26. Ms. Santillan scheduled an interview for Mr. Pared at the Leesport location for the

following day, January 24, 2019.

27. Upon his timely arrival at Ashley Furniture for his scheduled interview on January 24, 2019, Mr. Pared was asked to fill out an employment application.

28. While Mr. Pared was filling out the application, Defendant Jonathan Vazquez, Bilingual Recruiter at Ashley Furniture, came downstairs to stare at Mr. Pared.

29. This made Mr. Pared extremely uncomfortable, but he decided to ignore it, as he needed to obtain employment to support his family.

30. Mr. Vazquez told Mr. Pared to come upstairs with him and wait in a private room. While Mr. Pared waited, Mr. Vazquez engaged in conversations with other employees of Ashley Furniture, including Christopher Chrupcala, Executive Recruiter of Ashley Furniture, while pointing to and staring at Mr. Pared. This too made Mr. Pared uncomfortable.

31. Mr. Vazquez then led Mr. Pared into his office to conduct the interview.

32. During the interview, Mr. Vazquez told Mr. Pared that he was very impressed by his presence.

33. Although Mr. Pared was told that he would be interviewing for a supervisor position, Mr. Vazquez told Mr. Pared that he would be a better fit for the recruiter position available at Ashley Furniture.

34. Mr. Vazquez gave Mr. Pared a suggestive look when he told him that the recruiter position would place Mr. Pared directly across the office from Mr. Vazquez.

35. Mr. Vazquez also stated that, if Mr. Pared was a recruiter, they could work "side-by-side as partners."

36. Mr. Vazquez leaned close to Mr. Pared with a knowing smile and told him he knew how much Mr. Pared needed the job.

37. As Mr. Vazquez increasingly moved closer and closer to Mr. Pared physically, Mr. Pared had a sense of unease and discomfort.

38. Mr. Pared felt as if Mr. Vazquez was implying that Mr. Pared could obtain the job only in exchange for engaging in sexual acts with him.

39. As this exchange made Mr. Pared extremely uncomfortable, he stood up to create more physical space between himself and Mr. Vazquez, as well as end the uncomfortable interaction, thanked Mr. Vazquez for the interview, and left.

40. Later that day, shortly after the interview, Mr. Pared received an email from Executive Recruiter Christopher Chrupcala.

41. In the email, Mr. Chrupcala stated that he was very impressed with Mr. Pared's background and requested a phone interview to discuss the role further and to "get to know [Mr. Pared] a little better."

42. Mr. Pared emailed in response to thank Mr. Chrupcala for speaking with him and to reaffirm his strong interest in working for Ashley Furniture.

43. After the interview, Mr. Vazquez informed Mr. Pared that he was "the best interview" he had ever had.

44. Beginning that night, and for the next several days, Mr. Vazquez consistently and repeatedly texted Mr. Pared, propositioning him and making inappropriate sexually suggestive comments.

45. Mr. Pared either politely indicated in response that he was not interested, or did not respond to the inappropriate texts.

46. On January 29, 2019, Mr. Pared had his second interview at Ashley Furniture, with Mr. Chrupcala.

47. Unlike the lengthy and detailed first interview Mr. Pared had at Ashley Furniture, the interview with Mr. Chrupcala was short and abrupt.

48. Mr. Pared was asked vague questions, and the interview lasted only approximately five minutes.

49. On February 8, 2019, Mr. Pared was informed that he would not be offered a position with Ashley Furniture.

50. Mr. Vazquez was responsible for, and/or contributed to, the decision as to whether to hire Mr. Pared. Upon information and belief, Mr. Vazquez also conversed with others responsible for the decision as to whether to hire Mr. Pared, and convinced them not to hire Mr. Pared after he refused Mr. Vazquez's sexual advances.

51. The progression of Mr. Pared's interview process and efforts to obtain employment with Ashley Furniture demonstrates that, despite Ashley Furniture's significant interest in hiring Mr. Pared, Mr. Pared's reaffirmed interest in working at Ashley Furniture, and Mr. Pared's clear qualifications, Ashley Furniture failed and/or refused to hire Mr. Pared because of his sex and refusal to accept the sexual advances of Mr. Vazquez.

52. The online reviews of former employees on Indeed.com further demonstrate Ashley Furniture environment requiring acquiescence to management.

53. Notably, one review dated March 5, 2019 stated that: "The reason I was replaced was because I was not on the "popular" list with management because I never sucked up to them." This employer further noted that he had been "degraded on a daily basis & always wondering if today will be the day I loose [sic] my job because I'm not one of the managements 'in crowd.'"

54. Another former employee stated on November 28, 2018 that: "Supervisors are corrupt and

managers too."

55. On May 11, 2018, a former employee noted that: "on a more personal level, there are favorites played daily."

56. In summary: (i) Mr. Pared was highly qualified for various positions available at Ashley Furniture, including, but not limited to, the supervisor position; (ii) several representatives of Ashley Furniture told Mr. Pared that he was qualified and would be an excellent asset to Ashley Furniture; (iii) Mr. Pared spurned the explicit sexual advances made by Mr. Vazquez; (iv) Mr. Vazquez had a position of power and/or influence at Ashley Furniture in determining whether or not to hire Mr. Pared; and (v) based on Mr. Pared's refusal to acquiesce to the sexual advances of Mr. Vazquez, Ashley Furniture refused to hire Mr. Pared for any of the available positions.

57. It cannot be disputed that Mr. Pared was qualified for several of the positions available at Ashley Furniture, including but not limited to the position of supervisor, but Ashley Furniture failed and/or refused to hire Mr. Pared.

58. As of April 1, 2019, several positions at Ashley Furniture, including supervisor positions such as QA Manager, Managing Supervisor, and Distribution Center Receiving Supervisor, remained open and had not been filled.

59. The circumstances surrounding Ashley Furniture's failure to hire Mr. Pared despite his undisputed qualifications, successful interview and reaffirmed interest in working for Ashley Furniture, are indicia of a discriminatory animus against Mr. Pared.

60. Given his treatment by Ashley Furniture, Mr. Pared maintains that the Defendants discriminated, harassed and retaliated against him on the basis of his sex and for refusing the sexual advances of Mr. Vazquez.

61. Mr. Pared has been discriminated against, harassed and retaliated against in violation of the Pennsylvania Human Relations Act and Title VII.

62. Mr. Pared has suffered and continues to suffer mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendants.

63. Defendants' agents and employees involved in discriminating against, harassing and retaliating against Mr. Pared all acted with the intent of causing, or in reckless disregard of the probability, that their actions would cause Mr. Pared severe emotional distress.

64. Mr. Pared has suffered financial losses including, among other things, lost wages, and an obligation for attorneys' fees and costs of pursuing this action, as a direct and proximate result of the actions and inactions of Defendants.

## COUNT I
### Title VII of 1964, 42 U.S.C. § 2000(e), et seq.
### (Plaintiff v. Ashley Furniture Industries, Inc.)

65. Plaintiff Roberto Pared, Jr. repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

66. Based on the foregoing, Defendant Ashley Furniture engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

67. In discriminating against and harassing Mr. Pared because of his sex and refusal to give in to Mr. Vazquez' sexual advances, and in retaliating against Mr. Pared for his refusal to give in to Mr. Vazquez' sexual advances, Defendant Ashley Furniture violated Title VII.

68. Defendant's violations were intentional and willful.

69. Defendant's violations warrant the imposition of punitive damages.

70. As a direct result of the unlawful employment practices engaged in by Defendant, Plaintiff Roberto Pared, Jr. has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT II
### Pennsylvania Human Relations Act, 29 U.S.C. § 2611, et seq.
### (Plaintiff v. All Defendants)

71. Plaintiff Roberto Pared, Jr. repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

72. Based on the foregoing, Defendants engaged in unlawful employment practices in violation of the PHRA.

73. In discriminating against and harassing Mr. Pared because of his sex and refusal to give in to Mr. Vazquez' sexual advances, and in retaliating against Mr. Pared for his refusal to give in to Mr. Vazquez' sexual advances, Defendant Ashley Furniture violated the PHRA.

74. Mr. Vazquez aided and abetted Ashley Furniture's violations of the PHRA.

75. Defendants' violations were intentional and willful.

76. As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendants, Plaintiff Roberto Pared, Jr. has sustained a loss of earnings, severe emotional and psychological distress, personal embarrassment, loss of self-esteem, loss of earning power, back-pay, front-pay, interest due thereon, and has incurred attorneys' fees and costs.

## PRAYER FOR RELIEF

77. Plaintiff Roberto Pared, Jr. repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Roberto Pared, Jr. respectfully requests that this Court enter judgment in his favor and against Defendants, and Order:

a. Appropriate equitable relief;

b. Defendants to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which he would have been entitled had he not been subjected to unlawful discrimination, harassment and retaliation;

c. Defendants to compensate Plaintiff with the wages and other benefits and emoluments of employment lost due to Defendants' unlawful conduct;

d. Defendants to pay Plaintiff punitive damages;

e. Defendants to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f. Defendants to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

g. Plaintiff be granted any and all other remedies available; and

h. Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

                                                 */s/ Christopher A. Macey, Jr.*
                                                 Christopher A. Macey, Jr., Esquire
                                                 Jennifer C. Bell, Esquire
                                                 Bell & Bell LLP
                                                 One Penn Center
                                                 1617 JFK Blvd. – Suite 1254
                                                 Philadelphia, PA  19103

                                                 *Attorneys for Plaintiff Roberto Pared, Jr.*

Dated:  March 1, 2021